FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Dec 26, 2018
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | |
|---|---|
| SCOTT ATKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 18-2212 |
| v. | ) |
| | ) JURY DEMAND |
| INDUSTRIAL SPLICING & SLING, LLC. | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Comes the plaintiff, Scott Atkins, by his attorney, Antonio Carroll, and for this, his Complaint against INDUSTRIAL SPLICING & SLING, L.L.C., states:

### I. INTRODUCTORY STATEMENT

1. This is an action to redress employee discrimination based upon disability in violation of Title I of the Americans with Disabilities Act (hereafter "A.D.A."), U.S.C. § 12101 *et seq.,* as amended, and 42 U.S.C. § 12111 *et seq.,* age discrimination in violation of the Age Discrimination in Employment Act (hereafter "A.D.E.A."), 29 U.S.C. § 621 *et seq.;* a permanent injunction prohibiting the defendant from engaging in policies and practices contained herein provided*;* back pay, compensatory, liquidated, and punitive damages based upon defendant's willful and deliberate violation of Title I of the A.D.A. and Title VII of the Civil Rights Act of 1991, and the A.D.E.A. as provided under 29 U.S.C. § 621 *et seq.;* and court costs, attorney's fees, and any other legal and equitable relief to which he would have been entitled had he not been a victim of discrimination pursuant to the A.D.A., the A.D.E.A., and 29 U.S.C. § 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction of the federal claims asserted herein pursuant to §1331 and § 1343 of Title 28 (28 U.S.C. §1331, 1343).

3. The unlawful practices complained of in this Complaint occurred and the employment records relevant to this matter are maintained and administered within the Western District of Arkansas and venue is proper in this district.

## III. ADMINISTRATIVE PROCEDURES

4. Mr. Atkins filed a charge against the Defendant with the Equal Employment Opportunity Commission (EEOC) on or about January 29, 2018, and received a "notice of right to sue" letter dated September 27, 2018, which is attached hereto as Exhibit "A".

## IV. PARTIES

5. Mr. Atkins is a citizen of the United States and at all times relevant, a resident of Greenwood, Sebastian County, Arkansas. He was employed by the defendant, INDUSTRIAL SPLICING & SLING, L.L.C. (hereafter "SPLICING"), and at all times relevant to this action, was an employee within the meaning of the applicable statutes.

6. The defendant, SPLICING, is an Arkansas corporation organized and existing under the laws of the State of Arkansas and said corporation has its principal place of business in Tulsa, Tulsa County, Oklahoma, and was at all times relevant to this action, Mr. Atkins's employer. That the defendant, SPLICING has, at all times relevant to this action, employed more than fifteen (15) persons. That the registered agent for service of process of SPLICING is SLING ACQUISTION CORPORATION, 1842 N. 109TH E. AVE., FORT SMITH, AR 72901.

## V. FACTS

7. Mr. Atkins worked for nearly two decades for the Defendant as an Outside Sales Representative at its Fort Smith location. During this time, Mr. Atkins built up a sizable client base and earned top salesman for several years as well as receiving incentive pay for sales and service.

8. Mr. Atkins gained vast knowledge in all operation and sales of the business at the Fort Smith location from working alongside management in running the business. Mr. Atkins gained vast amounts of unused paid time off because of this work and the small staff component at this

location. The Defendant permitted the accrual of such time because of Mr. Atkins's sales and good work.

9. In January 2011, Mr. Atkins developed Chronic Obstructive Pulmonary Disease (COPD) but continued to lead the Fort Smith location in millions of dollars of gross sales.

10. During any time Plaintiff was unable to work due to his COPD, he used his vast annual and sick leave accumulated from growing the Defendant's business and not taking personal time off.

11. Mr. Atkins was so skilled in his job that in December 2016, Mr. Mike Parham, Vice President of Operations, offered Mr. Atkins the job of manager of the Fort Smith branch.  However, Mr. Parham refused to allow Plaintiff to take the position after he accepted.

12. This action began a series of retaliatory and discriminative practices by the Defendant against a valuable employee.

13. In April 2017, Mr. Atkins worked using doctor prescribed oxygen and the aid of his spouse to complete a field training event in Oklahoma.

14. The Defendant's CEO Larry Postelwait, and Plaintiff were scheduled to work this event together.

15. At this event, Mr. Postelwait made derogatory remarks about Mr. Atkins's health and verbally expressed displeasure at Mr. Atkins for using oxygen while working.

16. After this event, Mr. Postelwait began taking overt actions to force Mr. Atkins out of the company. These actions included encouraging Mr. Atkins to go on disability, explaining how much Mr. Atkins could make on disability in front of the rest of the staff, and saying he should go home and be with his family during the time he has left.

17. On July 17, 2017, Mr. Postelwait stated Mr. Atkins needed to get back on track from his disability complications or he would be fired the next month.

18. On July 26, 2017, Mr. Atkins contacted Defendant Owner Linda Metz in an attempt to stop this discrimination regarding the state of his health and provided that if the job situation did not change he would be forced to retire.

19. On or about July 27, 2017 Mr. Postelwait and Mr. Parham celebrated Mr. Atkins's disability could cause him to be forced out of the company. Mr. Postelwait exclaimed that "I don't know who talked some sense into you, but I am damn sure glad they did" on learning Mr. Atkins may retire.

20. On September 11, 2017, the Company offered Ryan Glidewell, an employee under 40 and significantly younger than Mr. Atkins, Mr. Atkins's current position and forced him to train Mr. Glidewell.
21. On September 15, 2017, Mr. Atkins asked Mr. Parham about an open inside sales position and Mr. Parham called Mr. Glidewell and said that he was not offering the job to Mr. Atkins because of his health.
22. On or about October 2, 2017, Mr. Atkins called Ms. Metz regarding his interest in the inside sales job and Mr. Parham's lack of responsiveness to his inquiry.
23. On October 6, 2017, Jerry Howland, the Fort Smith location branch manager, along with Mr. Postelwait and Mr. Parham interviewed Plaintiff for the inside sales position. Mr. Howland attempted to give Mr. Atkins the job based on the interview and experience, but Mr. Postelwait and Mr. Parham refused to listen to the recommendation of Mr. Howland, the direct supervisor of both Mr. Mailer and Mr. Atkins.
24. On or about October 24, 2017, Mr. Parham notified Mr. Atkins that he did not get the inside sales job and asked Mr. Atkins to sign a resignation letter Mr Parham had prepared to be able to allow Mr. Atkins to get "COBRA benefits". Mr. Atkins refused to sign and asked for a reasonable accommodation to allow him to continue to work.
25. On October 26, 2017, Ms. Metz sent an email to the Plaintff requesting he sign Mr. Parham's resignation letter to receive "COBRA". The Defendant failed to investigate his accommodation requests, but stated only that "no such positions were or would become available before the end of the year."
26. On October 30, 2017, Mr. Atkins responded to Ms.Metz and refused to sign the resignation for health reasons and asked for a reasonable accommodation. No accommodation was provided.
27. On November 9, 2017 the current branch manager resigned from the manager's position, the position Mr. Parham offered to Mr. Atkins in December 2016.
28. On November 10, 2017, Mr. Parham offered Mr. Glidewell, an employee significantly younger and inexperienced than Mr. Atkins, the manager's position after he has only been working for the Defendant for 8 months.
29. On November 16, 2017, Mr. Postelwait and Mr. Parham interviewed other external candidates for the position but failed to reach out to Mr. Atkins.

30. On November 22, 2017, Mr. Atkins sent Mr. Parham an inquiry about the manager's position and requested an interview.
31. On November 28, 2017, Mr. Parham, alone, conducted an interview of Mr. Atkins. During the interview, Mr. Parham questioned Mr. Atkins about if his health would allow him to do the physical aspects of job.
32. On December 13, 2017, Mr. Parham notified Mr. Atkins that he did not get the position. Mr. Parham stated they had decided to go through a "head hunter to hire a guy that was a real manager." Without engaging Mr. Atkins or investigating his health, Mr. Parham offered that with the Defendant's budget and Mr. Atkins's perceived health issues "there was nothing they could do." Mr. Parham told Mr. Atkins he no longer qualified for a job he was offered in December 2016 because of his health status.
33. On December 14, 2017, Mr. Parham came out in the shop and asked Mr. Atkins to sign the resignation letter from Ms. Metz so they could get his "Cobra" started. Mr. Parham said the Defendant needed it before the end of the year.
34. On December 31, 2018, Mr. Atkins tendered a resignation letter under protest after six months of trying to get the Defendant to engage in the interactive process to accommodate his disability.

## V. STATEMENT OF CLAIMS

### *COUNT I- VIOLATION OF THE AMERICANS WITH DISABILITIES ACT*

35. Plaintiff incorporates paragraphs 1-35 as if fully realleged herein.
36. Plaintiff is and was at all times material hereto an individual with a disability, Chronic Obstructive Pulmonary Disease ("COPD"), significantly affecting and substantially limiting various major life activities.
37. Plaintiff was capable of performing the essential functions of his job with or without a reasonable accommodation.
38. Plaintiff has been discriminated against under the ADA fulfilled all conditions precedent to the filing of this action.

   a. **Actual and/or Perceived Disability and/or Record of Impairment (COPD)**

39. Defendant perceived or regarded Plaintiff to have a disability within the meaning of the ADA and Plaintiff is a "qualified individual with a disability".

40. Based upon their knowledge of Plaintiff's history of COPD, and motivated by their false belief that Plaintiff had an alleged disability that might keep him from doing his job properly, Defendant, acting through its representative employees and agents, harassed Mr. Atkins because what Defendant's representative employees and agents perceived to be a continuing disability and then discharged Plaintiff in violation of the ADA, motivated inter alia by a false perception that Plaintiff had an alleged disability that might prevent him from doing his job properly.

   b. **Disability Discrimination, Retaliation, & Constructive Discharge**

41. Defendant treated Plaintiff unfavorably because he has a disability and because he engaged in protected EEO related activity (requesting reasonable accommodations).
42. There is a casual connection between Mr. Atkins's protected activities and Defendant's adverse employment actions against Plaintiff.
43. Other similarly situated employees of Defendant that were of a different class than Plaintiff (i.e., not suffering from a disability, no prior EEO activity) were treated more favorably than Plaintiff.
44. Defendant discriminated against Plaintiff as a result of his disability by constructively discharging him due to symptoms related to his disability.

   c. **Hostile Work Environment**

45. Defendant created a hostile work environment for Mr. Atkins by making unwelcomed and unwarranted comments about his disability on numerous occasions.
46. These comments were pervasive and occurred in front of other employees, which included encouraging Mr. Atkins to go on disability, explaining how much Mr. Atkins could make on disability in front of the rest of the staff, and saying he should go home and be with his family for the time he has left.
47. These comments were intentional and aimed at pushing Mr. Atkins out of the company, including threatening his job.
48. At all relevant times as set forth herein, the discrimination from the Defendant was severe and pervasive as to create a hostile work environment which affected the terms, conditions, and/or privileges of the Plaintiff's employment with the Defendant.

   d. **Failure to Accommodate & Engage in the Interactive Process**

49. The ADA required the Defendant to engage in an informal interactive process in good faith to determine whether Mr. Atkins could perform the true essential functions of his jobs and the jobs for which he applied with or without accommodation.

50. Defendant failed to engage in the required interactive process in good faith and therefore violated the ADA, 42 U.S.C. §12101, et seq.

51. During the last six months of Plaintiff's employment with Defendant, Plaintiff was repeatedly denied requests for reasonable accommodations needed to help him perform the duties of his job and enjoy the benefits and privileges of employment.  Requests to accommodate were made July 26; October 24, 30; November 9; and December 13, 2017.

52. Defendant didn't even bother to investigate or engage Mr. Atkins's reasonable accommodations requests. Rather, Defendant disciplined Plaintiff and constructively discharged him on December 31, 2017 in violation of applicable laws.

### *COUNT II- VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT*

53. Plaintiff incorporates paragraphs 1-53 as if fully realleged herein.

54. Plaintiff is an individual who is 60 years old, born on XX/XX/1957, and is a resident of Greenwood, Arkansas who was perceived by Defendant as being unable to perform his duties because of his age.

55. Plaintiff began receiving numerous and continuing rude comments about his age from Mr. Postelwait. For example, Postelwait made a comment that Plaintiff should go home to his family because he doesn't have a lot of time left.

56. Defendant's constructive discharge of Plaintiff shows Defendant believed that Plaintiff's age substantially limits and/or is perceived by Defendants to substantially limit Plaintiff's performance of his job duties. Plaintiff is qualified to perform the essential functions of inside sales, outside sales, and branch manager as well as other jobs that were available at Defendant's locations.

57. Defendants have intentionally discriminated against Plaintiff because of his age, by exhibiting bias toward Plaintiff, treating Plaintiff in a discriminatory manner compared with his younger peers, harassing Plaintiff on the basis of his age, and failing to promote Plaintiff because of his age.

58. Defendant offered younger employees vacant positions Mr. Atkins was most qualified for.

59. Defendant failed to offer Mr. Atkins a fair interview process and willfully attempted to exclude him from being promoted.
60. Defendants have engaged in a single continuous course of conduct of discrimination against Plaintiff because of Plaintiff's age.
61. The discriminatory motive is evidenced through the fact that the reason given to Mr. Atkins for his constructive discharge was false pretext; and in the alternative, even if Defendant's reason is not wholly a pretext, one factor motivating the discharge was his age, or in retaliation for exercising his rights under the ADA.

### *COUNT III- VIOLATION OF THE FAIR LABOR STANDARDS ACT*

62. Plaintiff incorporates paragraphs 1-61 as if fully realleged herein.
63. Defendant has asserted to the EEOC that the
    a. Plaintiff was given paid leave when out for his disability in excess of what Mr. Atkins was entitled to when in fact Plaintiff did not utilize his paid time off for several years, which can be attested by the previous branch managers.
    b. Plaintiff was off sick for 3 months when in fact Mr. Atkins was working remotely, in the Defendant's offices, and from home.
    c. Plaintiff was working in the field when he was picked up by the ambulance in April 2017 when actually Mr. Atkins was on vacation.
64. Because these assertions are untrue, the Defendant has admitted to inaccurately tracking the hours worked by Mr. Atkins and the other employees of the Defendant.
65. All employers subject to the Fair Labor Standards Act must maintain and preserve certain records describing the wages, hours and working conditions of their employees.
66. Failure to comply with the recordkeeping requirements is a violation of the FLSA for which criminal or civil sanctions may be imposed, whether or not other statutory violations exist. See 29 U.S.C. § 215(a)(5). *See Dunlop v. Gray-Goto, Inc.*, 528 F.2d 792 (10th Cir. 1976).
67. Accurate records are not only required for regulatory purposes, they are critical to an employer's defense of claims that it violated the Act. An employer that fails to maintain the required records cannot avoid liability in a wage-hour case through argument that there is insufficient evidence of the claimed hours worked. *See Wirtz v. First State Abstract Ins. Co.*, 362 F.2d 83 (8th Cir. 1966); *Boekemeier v. Fourth Universalist Soc'y*, 86 F. Supp. 2d 280 (S.D.N.Y. 2000).

68. An employer's failure to maintain records may create a presumption in the aggrieved employee's favor. *See Myers v. The Copper Cellar Corp.*, 192 F.3d 546, 551 n.9 (7th Cir. 1999), *citing Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946).
69. Defendant has failed to accurately record, report, credit and/or compensate its employees', including Mr. Atkins, time records.
70. Defendant has failed to make, keep and preserve records, with respect to each of its' employees, sufficient to determine the wages, hours and other conditions and practices of employment in violation of 29 CFR 516.2 and 29 U.S.C. §§ 21, 216 and related laws.
71. Further, the Defendant's assertions to EEOC suggest the Defendant has misclassified Mr. Atkins and all of Defendant's employees as overtime exempt without assessing the duties of the employees and would thereby owe Mr. Atkins for any overtime worked.
72. Case law holds that in addition to the corporation itself, corporate officers with operational control are considered an "employer" and can be held jointly and severally liable for unpaid wages. Thus, Metz, Postelwait and Parham, both corporate officers and FLSA "employers", are necessary parties to this action. The FLSA carries not only personal liability for managers of the corporate employer, but also potential criminal liability as well for willful violations. *See Hertz v. Drivurself Stations v. United States*, 150 F.2d 923, 929 & n.3 (8th Cir. 1945)(holding branch manager of rental car company criminally liable as "employer" under Section 3(d) of FLSA).

## *APPLICABLE TO ALL COUNTS*

73. At all relevant dates and times as forth herein, the Defendant was vicariously liable for the actions and inappropriate conduct of its employees, agents and/or representatives because: (a) the Defendant did not exercise reasonable care to promptly correct and prevent discriminating behavior; (b) the Defendant did not properly supervise and train the Plaintiff's supervisors regarding appropriate behavior towards employees; (c) the Defendant did not properly train the Plaintiff's supervisors regarding the Defendant's policies towards a workplace free of disability discrimination; (d) the Defendant did not have a viable and reasonable procedure and policy in effect to encourage and promote employees to report disability discrimination occurring within the Defendant's workplace; and (e) the Defendant did not have a viable and

reasonable procedure and policy in effect to provide reasonable accommodation to their employees with disabilities.

74. The unlawful employment practices complained of herein were, and are, intentional acts committed by Defendant, SPLICING, and demonstrate a conscious disregard of Mr. Atkins's rights.

75. By the conduct described herein, the Defendant, SPLICING, has engaged in unlawful practices and has discriminated against Mr. Atkins on the basis of his record of disability and his age.

76. Mr. Atkins has been damaged by the defendant's actions and is entitled to relief.

77. **WHEREFORE, PREMISES CONSIDERED, Plaintiff, Scott Atkins, seeks the following relief:**

    a. declaring that the acts and practices complained of herein are in violation of Mr. Atkins's rights secured by Americans With Disabilities Act of 1990 and/or the Age Discrimination in Employment Act, as amended, and the Fair Labor Standards Act;

    b. requiring the Defendant to reinstate Mr. Atkins to the position of equal duties and responsibilities, with equal pay and benefits, as Mr. Atkins would have received but for the discriminatory conduct, or in the alternative, for an award of front pay;

    c. temporarily and permanently enjoining the Defendant and its owners, officers, management personnel, employees, agents, attorneys, successors and assigns, and those acting in concert from any conduct violating Plaintiff's rights as secured by the Americans With Disabilities Act, the Age Discrimination in Employment Act, and the Fair Labor Standards Act;

    d. award Mr. Atkins back pay, interest, and appropriate recovery for lost employment benefits, and other affirmative relief as may be appropriate under the Americans With Disabilities Act and the Fair Labor Standards Act;

    e. award Mr. Atkins liquidated damages pursuant to the Americans With Disabilities Act, the Age Discrimination in Employment Act, and the Fair Labor Standards Act;

    f. award Mr. Atkins compensatory and punitive damages;

    g. award Mr. Atkins compensatory and punitive damages for wrongful discharge:

    h. award Mr. Atkins his attorneys' fees and costs incurred in this action; and.

    i. such other and further relief to which this Court deems just and proper.

Dated: December 26,2018                              Respectfully submitted,

*Antonio T. Carroll*

**ANTONIO T. CARROLL**

TN BPR# 035076

Attorney for Plaintiff Scott Atkins

Antonio Carroll, Attorney-at-Law

4170 Knipfer Road

Joelton, TN 37080

Telephone: (870) 310- 9858

Email: antonio.carroll.esq@gmail.com